FILED
COURT OF APPEALS
DIVISION II

2013 MAR 12 AM 8:40

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42755-9-II |
| Respondent, | |
| v. | |
| JOHN PRESTON, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. — John Preston appeals the summary dismissal of his disability accommodation lawsuit against the State of Washington, arguing that genuine issues of material fact precluded summary judgment. Because Preston did not establish a prima facie case, we affirm.

## FACTS[1]

The Washington State House of Representatives did not rehire John Preston for the temporary parking attendant position he had filled during legislative sessions for 43 years. Preston sued the State, alleging age and disability discrimination, but the trial court dismissed the case on summary judgment.[2]

---

[1] The facts sections of both Preston's appellant's brief and reply brief consist almost entirely of argument in violation of RAP 10.3(5), which requires that the statement of the case be "[a] fair statement of the facts and procedure relevant to the issues presented for review, *without argument.*" (Emphasis added).

[2] Preston has abandoned his age discrimination claim on appeal by failing to brief it. *Holder v. City of Vancouver*, 136 Wn. App. 104, 107, 147 P.3d 641 (2006).

Before ruling, the trial court considered Preston's deposition. There, Preston admitted that he was initially hired for the parking attendant position without interview under the "patronage" system because his father knew a House representative.[3] Preston claimed that the job required him only to "[t]alk to people and park cars." Clerk's Papers (CP) at 47.

Preston stated that he had ataxia[4] based on an accident that occurred when he was a child. He said that he did not have any problems based on this disability, except for his balance, but also claimed, contradictorily, that he had no problems with balance, and that there was "nothing [he] couldn't do." CP at 43, 48.

The trial court also considered the declaration of Ron Finley, Preston's immediate supervisor. Finley averred that he had typically customized job requirements to suit the needs of those hired under the patronage system. Finley was aware of Preston's mobility limitations and accommodated them by assigning other employees to share Preston's responsibilities, but, because of meal breaks and absences, it was not possible to have another employee assist Preston all the time. During times when Preston worked alone, "there was a notable increase in complaints and confusion as several duties went unattended." CP at 87. Also, Finley was concerned that Preston's mobility limitations "left him with a propensity to injure himself and other risks," regardless of what duties he was assigned. CP at 88.

Budget cuts in 2009 required the elimination of three positions, as well as the establishment of broader responsibilities for parking attendants. Finley stated that this staffing reduction led to positions being "reorganized to be multi-functional." CP at 89. Finley declared

---

[3] Under the patronage system, a House representative's signature on a job application was the only qualification required for the job at issue.

[4] Ataxia is a progressive condition affecting balance, coordination, and speech.

that Preston was not rehired because his qualifications did not match the requirements of any of the updated positions.

Disability management specialist Carl Gann performed an on-site job analysis.[5] Gann's analysis listed a number of "essential functions" requiring mobility, including the duty to:

1. "Chase unpermitted entering cars to prevent parking in the reserved lot;"
2. "Occasionally assist with loading and unloading;"
3. "Move barricade and sand bags on and off the entrance to contain vehicle flow into the lot;"
4. "Valet park for urgent legislators and house keys until return;" and
5. "Shovel snow from the walk around the parking shack." CP at 97-98.

Gann listed as "marginal functions" the need to "[a]ssist vendors with loading and unloading vehicles,"[6] and to "[r]espond to emergencies including perform CPR [(cardiopulmonary resuscitation)]." CP at 98. Gann described the job as requiring walking 45 per cent of the time, with the need to "[r]arely run to chase cars." CP at 99. And Gann found that employees were "seldom" required to stoop or bend to shovel snow, lift sandbags, and move barricades.[7] Preston offered no evidence to contradict any of Gann's findings, except his deposition testimony that he hadn't chased cars in "years."

Dr. Aleksandra Zietak, a physician who examined Preston's medical records and reviewed Gann's report, opined that because of Preston's "imbalance and need to use a walker," he would not be able to lift sand bags or barricades. CP at 67, 69. Preston claimed that he did

---

[5] Finley agreed that Gann's analysis correctly described the parking attendant's job.

[6] It appears from Gann's analysis that assisting *vendors* with loading and unloading was a marginal function, whereas assisting non-vendors was an essential function.

[7] Gann's report defined the word "seldom" as reflecting a duty that must be performed "1-8 times per hour." CP at 98.

not need a walker until after the State declined to rehire him. However, the trial court also considered a report by Dr. Zietak that analyzed Person's prior medical records. Preston's medical records from 2007 indicated that he had complained of dizziness for years and had a "markedly ataxic gait." CP at 69. His gait was further described as "very unusual" and "very abnormal." CP at 69-70. And according to an examination dated March 6, 2008, two days before Preston's last day of work on March 8, Preston was "in danger of falling all of the time" unless seated. CP at 6, 70. Thus, although Preston's need for a walker followed the State's refusal to rehire him, the "imbalance" that Dr. Zietak noted did not.

## ANALYSIS

### I. STANDARD OF REVIEW

We review a grant of summary judgment de novo. *Briggs v. Nova Servs.*, 166 Wn.2d 794, 801, 213 P.3d 910 (2009). Summary judgment is appropriate where, viewing all facts and resulting inferences most favorably to the nonmoving party, the court finds no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Briggs*, 166 Wn.2d at 801. "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

To show a genuine issue of material fact on a discrimination claim, an employee "must do more than express an opinion or make conclusory statements." *Marquis v. City of Spokane*, 130 Wn.2d 97, 105, 922 P.2d 43 (1996). The employee must establish specific and material facts to support each element of his or her prima facie case. *Hiatt v. Walker Chevrolet Co.*, 120 Wn.2d 57, 66, 837 P.2d 618 (1992).

Here, the State, as the moving party, bears the initial burden to show the absence of any genuine issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). But the State may meet this initial burden by identifying those portions of the record showing that Preston has failed to present sufficient evidence to support his case. *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 350-51, 144 P.3d 276 (2006); *Young,* 112 Wn.2d at 225 n.1. The burden then falls to Preston to present admissible evidence showing a genuine issue of material fact on every essential element of his case. *Pac Nw. Shooting*, 158 Wn.2d at 351; *Young*, 112 Wn.2d at 225.

## II. ACCOMMODATION CLAIM

Preston argues an accommodation claim: that the State unlawfully discriminated against him by failing to make reasonable accommodation for his disability.[8] Because Preston failed to make out a prima face case for his accommodation claim, we affirm summary judgment against Preston.

The Washington Law Against Discrimination (WLAD) forbids employers to refuse to hire, discharge, bar from employment, or discriminate against a person based on disability. RCW 49.60.180(1)–(3). Under RCW 49.60.180, a disabled employee may assert an accommodation claim based on the employer's failure to make reasonable accommodations for the employee's disability. *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 145, 94 P.3d 930 (2004). The elements of an accommodation claim are: (1) the employee had a disability, (2) the

---

[8] Preston conflates his accommodation claim with a "disparate treatment" claim by arguing that the State refused to rehire him because of his disability, and that the State's reasons for refusing to rehire him were pretextual. But Preston is not bringing a disparate treatment claim. As such, his discussion of the State's reasons for refusing to rehire him and whether those reasons were pretext is irrelevant to this appeal.

employee was qualified to perform the essential functions of the job with or without reasonable accommodation, (3) the employee gave the employer notice of the disability, and (4) the employer failed to adopt measures reasonably necessary to accommodate the disability. *See Riehl*, 152 Wn.2d at 145 (providing similar list of elements of an accommodation claim, though based on superseded definition of "disability"); *Easley v. Sea-Land Serv., Inc.*, 99 Wn. App. 459, 468, 994 P.2d 271 (2000) (clarifying that an employee may be qualified to perform the job's essential functions if the employee can perform them with or without reasonable accommodation).

It is undisputed that Preston met the first and third elements above: that he was disabled, and that he gave the State notice of his disability. But the State argues that Preston fails the second element because he was unable to perform several essential functions of the job. Preston does not argue that he was able to perform these functions; rather, he argues that these functions were not essential.[9] Uncontroverted evidence shows that Preston is incorrect on this point.

Preston further argues that he met the fourth element by showing that the State refused to adopt reasonable measures to accommodate his disability. The State responds that Preston's proposed accommodations—to reassign or eliminate essential functions—are unreasonable as a matter of law. The State is correct.

---

[9] Preston also argues that his inability to perform the essential functions of his job merely shows that he was disabled and required accommodation. Preston thus seems to argue that his inability to perform the job's essential functions bolsters his accommodation claim, rather than defeating it. But no law supports Preston's argument on this point. An employee whose disability makes it impossible for him to perform a job's essential functions cannot prove that he was qualified to perform said essential functions, and thus cannot show a prima facie case for an accommodation claim. *See Davis v. Microsoft Corp.*, 149 Wn.2d 521, 535-36, 70 P.3d 126 (2003) (employee failed to establish that he was qualified to do the job where disability prevented him from performing the essential job function of working more than 40 hours per week).

As such, Preston fails to establish a prima facie case. We affirm summary judgment.

A. *The Functions Preston Could Not Perform Without Accommodation Were Essential*

Preston does not argue that he could perform every function of his job without accommodation, thus the first issue we consider here is whether the functions he could not perform were truly essential. Because the State presented evidence that these functions were essential, and because Preston presented no evidence that these functions were not essential, there is no genuine issue of fact whether Preston was able to perform the job's essential functions without accommodation.

The essential functions of a job are the job's fundamental duties that are "basic, necessary, and indispensible," not "marginal" duties "divorced from the essence or substance of the job." *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 533, 70 P.3d 126 (2003). An employee is not qualified to do the job if the employee cannot perform the job's essential functions either with or without reasonable accommodation.[10] *Easley*, 99 Wn. App. at 468.

The State argues that Preston could not perform the following essential functions of the job: chasing unpermitted cars, assisting with loading and unloading, moving barricades and sandbags, valet parking, and shoveling snow.[11] Preston does not claim that he could perform

---

[10] Because an employee who can perform the job's essential functions with reasonable accommodation may be qualified to do the job, the second element (whether an employee is qualified to perform the essential functions of the job) overlaps with the fourth element (whether the employer refused to make reasonable accommodations). We discuss these elements separately.

[11] The State also argues that Preston was unable to respond to emergency situations and direct emergency vehicles. But the Gann report identified these as marginal functions. Nothing in the record contradicts Gann's opinion that these functions were marginal, rather than essential.

these duties, but rather argues that because Gann listed all of them as "marginal," "seldom," or "rare," they are not essential functions. Br. of Appellant at 7. Preston is incorrect.

Gann listed none of the above functions as marginal. In fact, he listed all of these functions as "essential." And while Gann's analysis explained that some essential parking attendant duties need be performed on a "seldom" or "rare," basis, he and Finley agreed that shoveling snow, moving sandbags and barricades, chasing cars, loading and unloading vehicles, and valet parking were all functions essential to the job of parking attendant.

Preston stated that he had not chased cars in years, but this showed only that Preston had not performed this duty, not that it was marginal. Preston's past performance created no genuine issue of material fact as to the job's requirements at the time when the State declined to rehire him.

Preston also argues that his performing the job for more than 40 years creates a genuine issue of fact whether he could perform its essential functions. But it was uncontroverted that in 2009, the State was required to reduce staff and expand job duties. Taking the evidence in the light most favorable to Preston, his long service shows only that he was qualified to perform the job before staffing reductions made it impossible to assign a co-worker to help him, and before the job's responsibilities were expanded. He produced no evidence that he was qualified to perform the job's essential functions without another employee handling some of them, or that he was qualified to perform the duties added in 2009. *See Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1262 (10th Cir. 2009) (essential function inquiry is not conducted as of original hire date, but rather as of time when essential functions were imposed).

8

Because Preston does not argue that he was able to perform the essential functions of a parking attendant, he has failed to show that he was qualified to perform the job without accommodation.

B. *Preston's Only Proposed Accommodations Are Unreasonable as a Matter of Law*

Preston next argues that there were genuine issues of material fact whether the State failed to reasonably accommodate his disability. But Preston's proposed accommodations, eliminating or reassigning essential job functions, are unreasonable as a matter of law.

The WLAD imposes a duty on employers to reasonably accommodate a disabled employee. *Pulcino v. Fed. Express Corp.*, 141 Wn.2d 629, 639, 9 P.3d 787 (2000). An employer is not required to grant an employee's specific request for accommodation. *Pulcino*, 141 Wn.2d at 643. Rather, an employer is required only to *reasonably* accommodate the disability. *Snyder v. Med. Serv. Corp.*, 98 Wn. App. 315, 326, 988 P.2d 1023 (1999), *aff'd* 145 Wn.2d 233, 35 P.3d 1158 (2001). And certain accommodations may be unreasonable as a matter of law. *Pulcino*, 141 Wn.2d at 644.

Here, Preston proposes only two accommodations that would have enabled him to perform the essential functions that he otherwise could not perform: reassignment or elimination of those functions. But such accommodations are unreasonable as a matter of law.

An employer is not required to eliminate or reassign essential job functions. *Pulcino*, 141 Wn.2d at 644. Requiring an employer to eliminate an essential job function nullifies the second element of an accommodation claim: that the employee was qualified to perform the job's essential functions. *Davis*, 149 Wn.2d at 534.

Preston argues to the contrary that reassignment or elimination of his duties was a reasonable accommodation because the State *made* that accommodation for many years. But this supererogatory accommodation does not establish that the accommodation was reasonable.

We look to federal law for guidance on this point. Our Supreme Court has recognized that federal law is instructive regarding the WLAD. *McClarty v. Totem Elec.*, 157 Wn.2d 214, 228, 137 P.3d 844 (2006).

The Seventh Circuit held in *Vande Zande v. Wis. Dep't of Admin.*, 44 F.3d 538, 545 (7th Cir. 1995), that when an employer "bends over backwards to accommodate a disabled worker . . . it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation." Punishing employers for going beyond their legal obligations would hurt disabled workers, not help them. 44 F.3d at 545.

As the *Vande Zande* court recognized, if we were to hold that the State must continue providing an accommodation that exceeded its legal duties, we would discourage employers from accommodating their employees beyond the letter of the law. Because employers, as a matter of law, need not reassign or eliminate job functions to accommodate a disabled employee, the State's past accommodation of Preston creates no genuine issue of material fact whether a reasonable accommodation was available.

The State has met its burden to show that Preston failed to present evidence that he was qualified to perform the job's essential functions or that reasonable accommodations were available. Preston has not met his resulting burden to provide admissible evidence creating a genuine issue of material fact on these elements. We affirm summary judgment against Preston.

No. 42755-9-II

## ATTORNEY FEES

Preston requests attorney fees on appeal "[t]o the extent allowed by law." Br. of Appellant at 25. But Preston fails to set forth any legal basis for his attorney fee request as RAP 18.1(b) requires. *Hudson v. Hapner*, 170 Wn.2d 22, 33, 239 P.3d 579 (2010). We deny his request.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Van Deren, J.

_____
Penoyar, J.